UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ATHENA DIAGNOSTICS, INC.,<br><br>    Plaintiff,<br><br> v.<br><br>AMBRY GENETICS CORPORATION,<br><br>    Defendant. | C.A. No.  4:09-CV-40199-FDS |

## DEFENDANT'S PRELIMINARY NON-INFRINGEMENT AND INVALIDITY DISCLOSURES

Pursuant to Local Rule 16.6 and Scheduling Order Docket No. 38, Defendant Ambry Genetics Corporation ("Ambry") makes its preliminary infringement disclosures to Plaintiffs Athena Diagnostics, Inc., et al. ("Plaintiffs"), including by reference of the attached table.

Ambry makes these disclosures based upon currently available information.  Ambry has not completed discovery of this matter and reserves the right to amend in light of discovery from Plaintiffs.

As set forth in the accompanying table, Ambry asserts that at least claims 1-15, 18, 20-35, 39-51, 54, 56-78 of U.S. Patent 6,274,310 (the '310 Patent) are invalid under at least 35 U.S.C. §§101, 102 and/or 103.

Also as set forth in the accompanying table, Ambry asserts, on information and belief, that the activities set forth in Plaintiff's Preliminary Infringement Disclosure do not result in infringement, either literally or under the doctrine of equivalents, of any asserted claims of the '533 Patent.

Ambry reserves the right to modify and/or supplement these positions and assertions as set forth in this disclosure.


COOLEY, LLP


/s/ Meghan M. Hart
_____

Meghan M. Hart
COOLEY LLP
500 Boylston Street
Boston, MA 02116-3736
mhart@cooley.com
(617) 937-2300

Jessica Wolff
COOLEY LLP
4401 Eastgate Mall
San Diego, CA 92121-1909
jwolff@cooley.com
(858) 550-6000

Tryn Stimart
COOLEY LLP
777 6th Street, NW
Suite 1100
Washington, DC 20001
Phone: 202-842-7800
tstimart@cooley.com
(703) 456-8553

Attorneys For Defendant,
Ambry Genetics Corporation

Dated:  June 30, 2010

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 30, 2010.

| | |
|---|---|
| David J. Brody<br>Hamilton, Brook, Smith & Reynolds, P.C.<br>530 Virginia Road<br>P.O. Box 9133<br>Concord, MA  01742-9133<br>Tel: 978-341-0036 | david.brody@hbsr.com |
| Deirdre Sanders<br>Hamilton, Brook, Smith & Reynolds, P.C.<br>530 Virginia Road<br>P.O. Box 9133<br>Concord, MA  01742-9133<br>Tel: 978-341-0036 | Deirdre.Sanders@hbsr.com |
| Christine M. Wise<br>Hamilton, Brook, Smith & Reynolds, P.C.<br>530 Virginia Road<br>P.O. Box 9133<br>Concord, MA  01742-9133<br>Tel: 978-341-0036 | Christine.Wise@hbsr.com |
| Matias Ferrario<br>Kilpatrick Stockton LLP<br>1001 West Fourth Street<br>Winston-Salem, NC  27101<br>Tel:  336-607-7475 | mferrario@kilpatrickstockton.com |
| Steven Moore<br>Kilpatrick Stockton LLP<br>1001 West Fourth Street<br>Winston-Salem, NC  27101<br>Tel:  336-607-7431 | smoore@kilpatrickstockton.com |
| Terry Klein<br>Henson Parker LLP<br>160 Federal Street, 10th Floor<br>Boston, MA  02110<br>Tel:  617-367-1800 | tklein@henshon.com |

/s/ *Meghan M. Hart*
Meghan M. Hart

**Table of Non-infringement and Invalidity Contentions**

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| 1.      A method for screening for pancreatic disease in a patient, comprising performing a detection step for a deletion at anyone of cytosines 202-207 of SEQ ID NO: 1 in the gene encoding insulin promoter factor 1, wherein detection of a said deletion is indicative of pancreatic disease. | Ambry does not infringe claim 1 either literally or under the doctrine of equivalents.<br><br>Ambry has not detected the recited mutation. | Claim 1 is invalid under at least 35 U.S.C. §§101, 102, and/or 103.<br><br>• Claim 1 is invalid under 35 USC §101, because the claim is directed to laws of nature, natural phenomena, and/or abstract ideas. *Gottschalk v. Benson*, 409 US 63 (1972).<br><br>• To the extent claim 1 encompasses sequencing of the recited region of the IPF-1 regardless of whether the deletion is present, claim 1 is invalid under 35 U.S.C. §102 as anticipated by both Inoue et al., *Diabetes* 45(6):789-796 (June 1996) and Stoffel et al., *Genomics* 28:125-126 (1995).<br><br>Both Inoue and Stoffel teach the sequencing of the IPF1 gene, including exon 1 (which includes cytosines 202-207 to SEQ ID NO:1).<br><br>Further, Stoffel states in the last sentence: "These genes should be considered candidates for contributing to diabetes susceptibility in families showing linkage of diabetes mellitus with these regions."<br><br>• Claim 1 is invalid under 35 U.S.C. §103 as being obvious over one or a combination of Inoue et al., et al. *Diabetes* (June 1996), Stoffel et al., |

116133 v1/DC

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| | | *Genomics* (1995), Watada et al., *Diabetes* (Dec. 1996), Watada et al., *Diabetes* (Nov. 1996), and Peers et al., *Mol. Endo* (1994).<br><br>**Inoue** teaches the nucleotide sequence of the IPF-1 gene, including exon 1 (SEQ ID NO:1 of the '310 Patent), as acknowledged by the Examiner (see Reasons for Allowance).<br><br>**Stoffel (1995)** teaches sequencing of the IPF-1 gene (see 2nd col. at page 125), and teaches that: "Mutations in IPF1 could be involved in several disorders, including agenesis of the pancreas and diabetes mellitus."<br><br>**Watada (Nov. 1996) and Watada (Dec. 1996)** teach that IPF-1 ("PDX-1") controls insulin and glucokinase mRNA expression in beta cells. Watada (Nov. 1996) states: "Because the insulin gene transcription factor IPF1 now has been shown to function as a transcription factor for the GK gene as well, impairment of its (IPF-1) function can be expected to cause such a decrease in GK gene expression. Recently, the possible vulnerability of IPF1 to chronic high glucose exposure has been suggested and clinically highlighted, since this may explain, in part, the glucose toxicity to pancreatic beta cells. Because any insufficiency of IPF1 functions may suppress the insulin and GK gene expressions and possibly disturb both insulin synthesis and secretion, the pathophysiological |

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| | | implication of IPF1 in the development of NIDDM needs to be clarified." **Peers** teaches that truncated STF-1 (IPF-1) lacking the N-terminal activation domain strongly inhibits insulin promoter activity. Further, Peers teaches that amino acids 1-84 can act as a transactivation domain (Fig. 5). Since, the sequence of the IPF-1 gene was known, as well as the requirement for the amino terminal domain (amino acids 1-84) for transactivation function, one of ordinary skill in the art was capable of determining the effect of a given mutation on transactivation activity. Given that the transactivation function of IPF1 to control insulin and glucokinase gene expression was known, as well as the link of this function to pancreatic disease, it would have been obvious to detect mutations in the IPF1 gene that may eliminate or may effect transactivation function. |
| 2.    A method for screening a patient for pancreatic disease, comprising the steps of:      a)      providing a nucleic acid sample from the patient, and      b)      performing a detection step to detect a deletion at any one of cytosines 202-207 of SEQ ID NO: 1 in the gene encoding insulin promoter factor-l (IPF-l) in the sample, wherein detection of a said deletion is indicative of pancreatic disease. | Ambry does not infringe claim 2 either literally or under the doctrine of equivalents. Ambry has not detected the recited mutation. | Claim 2 is invalid for the reasons set forth for claim 1. |

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| 3.      A method for screening a plurality of patients for pancreatic disease, comprising the steps of:<br>      a)      providing a plurality of nucleic acid samples from a corresponding plurality of patients, and<br>      b)      performing a detection step to detect a deletion at any one of cytosines 202-207 of SEQ ID NO: 1 in the gene 35 encoding insulin promoter factor 1 (IPF-l) in the plurality of samples, wherein detection of a said deletion in a said sample of said plurality of nucleic acid samples is indicative of pancreatic disease in a patient of said corresponding plurality of patients. | Ambry does not infringe claim 3 either literally or under the doctrine of equivalents.<br><br>Ambry has not detected the recited mutation. | Claim 3 is invalid for the reasons set forth for claim 1. |
| 4.      A method of testing a patient who is afflicted with MODY to determine whether or not said patient has MODY4, comprising performing a detection step for a deletion at anyone of cytosines 202-207 of SEQ ID NO: 1 in the gene encoding insulin promoter factor 1, wherein detection of a said deletion is indicative of MODY4. | Ambry does not infringe claim 4 either literally or under the doctrine of equivalents.<br><br>Ambry has not detected the recited mutation. | Claim 4 is invalid for the reasons set forth for claim 1.<br><br>Further, **Fajans**, *Diabetes Care* 13(1):49-64 (1990) teaches that MODY patients with low insulin responses have delayed or decreased insulin secretory responses to glucose from childhood or adolescence even before glucose tolerance appears "**which may represent the basic genetic defect**." (see Abstract) |
| 5.      A method of screening for pancreatic disease in a patient whose parents both carry an inactivating mutation consisting of a deletion at anyone of cytosines 202-207 of SEQ ID NO: 1 in the gene encoding IPF-l, | Ambry does not infringe claim 5 either literally or under the doctrine of equivalents.<br><br>Ambry has not detected the recited mutation. | Claim 5 is invalid for the reasons set forth for claims 1 and 4. |

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| comprising performing a detection step for the mutation in the gene encoding IPF -1, wherein detection of the mutation is indicative of pancreatic disease. | Further, the evidence does not establish that both parents of any Ambry subject have the recited inactivating mutation. | |
| 6.       A method for testing a patient for pancreatic agenesis or MODY4, comprising the steps of:<br>        a)       providing a nucleic acid sample from said patient,<br>        b)       performing on both allelic copies of the gene encoding insulin promoter factor-l (IPF-l) a detection step for a deletion at anyone of cytosines 202-207 of SEQ ID NO: 1 in said gene, and<br>        c)       detecting a said deletion in one or both of said allelic copies of said gene in said sample, wherein homozygosity of a said mutation is indicative of pancreatic agenesis and heterozygosity of a said mutation is indicative of MODY4. | Ambry does not infringe claim 6 either literally or under the doctrine of equivalents.<br><br>Ambry has not detected the recited mutation. | Claim 6 is invalid for the reasons set forth for claims 1 and 4. |
| 7.       A method for screening for mature onset diabetes of the young (MODY) in a patient, comprising detecting an insulin promoter factor 1 (IPF-l) gene comprising a mutation, wherein said IPF-l gene comprising a mutation encodes a truncated IPF -1 protein which lacks transactivation function, and wherein detection of heterozygosity for said mutation is indicative of MODY. | Ambry does not infringe claim 1 either literally or under the doctrine of equivalents.<br><br>Ambry has not detected the recited mutation. | Claim 7 is invalid under at least 35 U.S.C. §§101, 102, and/or 103.<br><br>• Claim 7 is invalid under 35 USC §101, because the claim is directed to laws of nature, natural phenomena, and/or abstract ideas. *Gottschalk v. Benson*, 409 US 63 (1972).<br><br>• To the extent claim 7 encompasses sequencing of the recited region of the IPF-1 regardless of whether the |

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| | | deletion is present, claim 7 is invalid under 35 U.S.C. §102 as anticipated by both Inoue et al., *Diabetes* 45(6):789-796 (June 1996) and Stoffel et al., *Genomics* 28:125-126 (1995).<br><br>Both **Inoue** and **Stoffel** teach the sequencing of the IPF1 gene, including exon 1 (which includes cytosines 202-207 to SEQ ID NO:1).<br><br>Further, Stoffel states in the last sentence: "These genes should be considered candidates for contributing to diabetes susceptibility in families showing linkage of diabetes mellitus with these regions."<br><br>• Claim 7 is invalid under 35 U.S.C. §103 as being obvious over one or a combination of Inoue et al., et al. *Diabetes* (June 1996), Stoffel et al., *Genomics* (1995), Watada et al., *Diabetes* (Dec. 1996), Watada et al., *Diabetes* (Nov. 1996), Peers et al., *Mol. Endo* (1994), and Fajans, *Diabetes Care* 13(1):49-64 (1990).<br><br>**Inoue** teaches the nucleotide sequence of the IPF-1 gene, including exon 1 (SEQ ID NO:1 of the '310 Patent), as acknowledged by the Examiner (see Reasons for Allowance).<br><br>**Stoffel (1995)** teaches sequencing of the IPF-1 gene (see 2nd col. at page 125), and teaches that: "Mutations in IPF1 could be involved in |

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| | | several disorders, including agenesis of the pancreas and diabetes mellitus."<br><br>**Watada (Nov. 1996) and Watada (Dec. 1996)** teach that IPF-1 ("PDX-1") controls insulin and glucokinase mRNA expression in beta cells. Watada (Nov. 1996) states: "Because the insulin gene transcription factor IPF1 now has been shown to function as a transcription factor for the GK gene as well, impairment of its (IPF-1) function can be expected to cause such a decrease in GK gene expression. Recently, the possible vulnerability of IPF1 to chronic high glucose exposure has been suggested and clinically highlighted, since this may explain, in part, the glucose toxicity to pancreatic beta cells. Because any insufficiency of IPF1 functions may suppress the insulin and GK gene expressions and possibly disturb both insulin synthesis and secretion, the pathophysiological implication of IPF1 in the development of NIDDM needs to be clarified."<br><br>**Peers** teaches that truncated STF-1 (IPF-1) lacking the N-terminal activation domain strongly inhibits insulin promoter activity. Further, Peers teaches that amino acids 1-84 can act as a transactivation domain (Fig. 5).<br><br>**Fajans** teaches that MODY patients with low insulin responses have delayed or decreased insulin secretory responses to glucose from childhood or adolescence even before glucose |

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| | | tolerance appears "**which may represent the basic genetic defect**." (see Abstract)<br><br>Since the sequence of the IPF-1 gene was known, as well as the requirement for the amino terminal domain (amino acids 1-84) for transactivation function, one of ordinary skill in the art is capable of determining the effect of a given mutation on transactivation activity.<br><br>Given that the transactivation function of IPF1 to control insulin and glucokinase gene expression was known, as well as the link of this function to pancreatic disease, it would have been obvious to detect mutations in the IPF1 gene that may eliminate or may effect transactivation function. |
| 8.      The method of claim 7, wherein said mutation is a deletion of a base pair. | For the reasons set forth above for claim 7, Ambry does not infringe claim 8 either literally or under the doctrine of equivalents. | Claim 8 is invalid for the reasons set forth for claim 7. |
| 9.      The method of claim 7, wherein said mutation results in a translational frameshift. | For the reasons set forth for claim 7, Ambry does not infringe claim 9 either literally or under the doctrine of equivalents. | Claim 9 is invalid for the reasons set forth for claim 7. |
| 10.      The method of claim 7, wherein said mutation is IPFIΔC. | For the reasons set forth for claim 7, Ambry does not infringe claim 10 either literally or under the doctrine of equivalents. | Claim 10 is invalid for the reasons set forth for claims 1 and 7. |
| 11.      A method for screening a patient for MODY, comprising the steps:<br>a)      providing a nucleic acid sample from | Ambry does not infringe claim 11 either literally or under the doctrine of equivalents. | Claim 11 is invalid for the reasons set forth for claim 7. |

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| said patient, and<br>b)        detecting an IPF-l gene comprising a mutation in said sample of step a), wherein said gene comprising a mutation encodes a truncated IPF-l protein which lacks transactivation function, and wherein detection of heterozygosity for said mutation is indicative of MODY. | Ambry has not detected the recited mutation. | |
| 12.       The method of claim 11, wherein said patient is asymptomatic with regard to MODY. | For the reasons set forth for claim 11, Ambry does not infringe claim 12 either literally or under the doctrine of equivalents. | Claim 12 is invalid for the reasons set forth for claim 7. |
| 13.       The method of claim 11, wherein said patient is afflicted with symptoms of MODY. | For the reasons set forth for claim 11, Ambry does not infringe claim 13 either literally or under the doctrine of equivalents. | Claim 13 is invalid for the reasons set forth for claim 7. |
| 14.       The method of claim 11, wherein said nucleic acid sample is genomic DNA. | For the reasons set forth for claim 11, Ambry does not infringe claim 14 either literally or under the doctrine of equivalents. | Claim 14 is invalid for the reasons set forth for claim 7. |
| 15.       The method of claim 11, comprising a further step after step a) wherein a PCR product of the IPF-l gene of said genomic DNA is generated for use in the detection of step b). | For the reasons set forth for claim 11, Ambry does not infringe claim 15 either literally or under the doctrine of equivalents. | Claim 15 is invalid for the reasons set forth for claim 7.<br><br>With respect to the invalidity of claim 15 under 35 U.S.C. §103, Cotton, *Mutation Research*, 285:125-144 (1993) reviews methods for detecting mutations including PCR (see page 133). |
| 18.       The method of claim 14, 15, 16, or 17, wherein the detection of said mutation in the IPF -1 gene is performed by nucleic acid sequence analysis. | For the reasons set forth for claim 11, Ambry does not infringe claim 18 either literally or under the doctrine of equivalents. | Claim 18 is invalid for the reasons set forth for claim 15.<br><br>With respect to the invalidity of claim 18 under |

116133 v1/DC

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| | | 35 U.S.C. §103, Cotton, *Mutation Research*, 285:125-144 (1993) reviews methods for detecting mutations including sequence analysis. |
| 20.    A method for screening a plurality of patients for MODY, comprising the steps:<br>        a)        providing a plurality of nucleic acid samples from a corresponding plurality of patients, and<br>        b)        detecting an IPF-l gene comprising a mutation in said plurality of samples of step a), wherein said gene comprising a mutation encodes a truncated IPF-l protein which lacks transactivation function, and wherein detection of heterozygosity for said mutation in a sample of said plurality of samples in indicative MODY in a patient of said plurality of patients. | Ambry does not infringe claim 20 either literally or under the doctrine of equivalents.<br><br>Ambry has not detected the recited mutation. | Claim 20 is invalid for the reasons set forth for claim 7. |
| 21.    The method of claim 20, wherein said nucleic acid is genomic DNA. | For the reasons set forth for claim 20, Ambry does not infringe claim 21 either literally or under the doctrine of equivalents. | Claim 21 is invalid for the reasons set forth for claim 7. |
| 22.    The method of claim 21, wherein said plurality of patients comprises a group of unrelated individuals. | For the reasons set forth for claim 20, Ambry does not infringe claim 22 either literally or under the doctrine of equivalents. | Claim 22 is invalid for the reasons set forth for claim 7. |
| 23.    The method of claim 21, wherein said plurality of patients comprises a group of related individuals. | For the reasons set forth for claim 20, Ambry does not infringe claim 23 either literally or under the doctrine of equivalents. | Claim 23 is invalid for the reasons set forth for claim 7. |
| 24.    The method of claim 22 or 23, wherein said mutation is detected in said IPF-l | For the reasons set forth for claim 20, Ambry does not infringe claim 24 either literally or | Claim 24 is invalid for the reasons set forth for claim 7. |

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| gene in a patient selected from said plurality of patients who is asymptomatic with regard to MODY. | under the doctrine of equivalents. | |
| 25.     The method of claim 24, wherein said MODY is of the type MODY4. | For the reasons set forth for claim 20, Ambry does not infringe claim 25 either literally or under the doctrine of equivalents. | Claim 25 is invalid for the reasons set forth for claim 7. |
| 26.     The method of claim 23, in which a patient selected from said plurality of patients shows observable clinical manifestations of MODY. | For the reasons set forth for claim 20, Ambry does not infringe claim 26 either literally or under the doctrine of equivalents. | Claim 26 is invalid for the reasons set forth for claim 7. |
| 27.     The method of claim 26, in which said patient selected from said plurality of patients who shows observable clinical manifestations of MODY has MODY4. | For the reasons set forth for claim 20, Ambry does not infringe claim 27 either literally or under the doctrine of equivalents. | Claim 27 is invalid for the reasons set forth for claim 7. |
| 28.     A method of testing a patient who is afflicted with MODY to determine whether or not said patient has MODY4, comprising detecting an IPF-l gene comprising a mutation, wherein said gene comprising a mutation encodes a truncated IPF -1 protein which lacks transactivation function, and wherein detection of said mutation is indicative of MODY4. | Ambry does not infringe claim 28 either literally or under the doctrine of equivalents.<br><br>Ambry has not detected the recited mutation. | Claim 28 is invalid for the reasons set forth for claim 7. |
| 29.     A method of screening for MODY in a patient whose parents both carry an inactivating mutation in the gene encoding IPF-l, comprising detecting an IPF-l gene comprising a mutation, wherein said gene comprising a mutation encodes a truncated IPF-l protein which lacks transactivation | Ambry does not infringe claim 29 either literally or under the doctrine of equivalents.<br><br>Ambry has not detected the recited mutation.<br><br>Further, there is no evidence that the parents of any Ambry patient carry the recited | Claim 29 is invalid for the reasons set forth for claim 7. |

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| function, and wherein detection of heterozygosity for said mutation is indicative of MODY. | inactivating mutation. | |
| 30.      The method of claim 29, wherein said MODY is of the type MODY4. | For the reasons set forth for claim 29, Ambry does not infringe claim 30 either literally or under the doctrine of equivalents. | Claim 30 is invalid for the reasons set forth for claim 7. |
| 31.      The method of claim 29 or 30, wherein said screening is prenatal. | For the reasons set forth for claim 29, Ambry does not infringe claim 31 either literally or under the doctrine of equivalents.<br><br>Further, there is no evidence that Ambry has detected such a mutation during prenatal screening. | Claim 31 is invalid for the reasons set forth for claim 7. |
| 32.      The method of claim 29 or 30, wherein said screening is postnatal. | For the reasons set forth for claim 29, Ambry does not infringe claim 32 either literally or under the doctrine of equivalents. | Claim 32 is invalid for the reasons set forth for claim 7. |
| 33.      A method for testing a patient for MODY 4, comprising the steps:<br>      a)      providing a nucleic acid sample from said patient, and<br>      b)      detecting an IPF-l gene comprising a mutation in said sample of step a), wherein said gene comprising a mutation encodes a truncated IPF -1 protein which lacks transactivation function, and wherein detection of heterozygosity for said mutation is indicative of MODY 4. | Ambry does not infringe claim 33 either literally or under the doctrine of equivalents.<br><br>Ambry has not detected the recited mutation. | Claim 33 is invalid for the reasons set forth for claim 7. |
| 34.      The method of claim 33, wherein said testing is performed prenatally. | For the reasons set forth for claim 33, Ambry does not infringe claim 34 either literally or | Claim 34 is invalid for the reasons set forth for claim 7. |

116133 v1/DC

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| | under the doctrine of equivalents.<br><br>Further, there is no evidence that Ambry has detected such a mutation during prenatal screening. | |
| 35.      The method of claim 33, wherein said testing is performed postnatally. | For the reasons set forth for claim 33, Ambry does not infringe claim 35 either literally or under the doctrine of equivalents. | Claim 35 is invalid for the reasons set forth for claim 7. |
| 39.      A method for screening for pancreatic disease in a patient, comprising detecting an IPF-l gene comprising the mutation IPFlΔC, and wherein detection of said mutation is indicative of pancreatic disease. | Ambry does not infringe claim 39 either literally or under the doctrine of equivalents.<br><br>Ambry has not detected the recited mutation. | Claim 39 is invalid for the reasons set forth for claim 7. |
| 40.      The method of claim 39, wherein if said patient is homozygous for said mutation, said mutation is indicative of pancreatic agenesis. | For the reasons set forth for claim 39, Ambry does not infringe claim 40 either literally or under the doctrine of equivalents. | Claim 40 is invalid for the reasons set forth for claims 1 and 4. |
| 41.      The method of claim 39, wherein if said patient is heterozygous for said mutation, said mutation is indicative of the presence of diabetes mellitus. | For the reasons set forth for claim 39, Ambry does not infringe claim 41 either literally or under the doctrine of equivalents | Claim 41 is invalid for the reasons set forth for claims 1 and 4. |
| 42.      The method of claim 41, wherein said diabetes mellitus is of the form early onset type II. | For the reasons set forth for claim 39, Ambry does not infringe claim 42 either literally or under the doctrine of equivalents. | Claim 42 is invalid for the reasons set forth for claims 1 and 4. |
| 43.      The method of claim 42, wherein said diabetes mellitus of the form early onset type | For the reasons set forth for claim 39, Ambry does not infringe claim 43 either literally or | Claim 43 is invalid for the reasons set forth for claims 1 and 4. |

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| II is MODY. | under the doctrine of equivalents. | |
| 44.      A method for screening a patient for pancreatic disease, comprising the steps:<br>        a)      providing a nucleic acid sample from said patient, and<br>        b)      detecting an IPF-l gene comprising the mutation IPFlΔC in said sample of step a), and wherein detection of said mutation is indicative of pancreatic disease. | Ambry does not infringe claim 44 either literally or under the doctrine of equivalents.<br><br>Ambry has not detected the recited mutation. | Claim 44 is invalid for the reasons set forth for claims 1 and 4. |
| 45.      The method of claim 44, wherein said patient is asymptomatic with regard to pancreatic disease. | For the reasons set forth for claim 44, Ambry does not infringe claim 45 either literally or under the doctrine of equivalents. | Claim 45 is invalid for the reasons set forth for claims 1 and 4. |
| 46.      The method of claim 44, wherein said patient is afflicted with symptoms of pancreatic disease. | For the reasons set forth for claim 44, Ambry does not infringe claim 46 either literally or under the doctrine of equivalents. | Claim 46 is invalid for the reasons set forth for claims 1 and 4. |
| 47.      The method of claim 46, wherein said patient is afflicted with symptoms of diabetes mellitus. | For the reasons set forth for claim 44, Ambry does not infringe claim 47 either literally or under the doctrine of equivalents. | Claim 47 is invalid for the reasons set forth for claims 1 and 4. |
| 48.      The method of claim 47, wherein said patient is afflicted with symptoms of diabetes mellitus of the form early onset type II. | For the reasons set forth for claim 44, Ambry does not infringe claim 48 either literally or under the doctrine of equivalents. | Claim 48 is invalid for the reasons set forth for claims 1 and 4. |
| 49.      The method of claim 48, wherein said patient is afflicted with symptoms of MODY. | For the reasons set forth for claim 44, Ambry does not infringe claim 49 either literally or under the doctrine of equivalents. | Claim 49 is invalid for the reasons set forth for claims 1 and 4. |
| 50.      The method of claim 44, wherein said nucleic acid sample is genomic DNA. | For the reasons set forth for claim 44, Ambry does not infringe claim 50 either literally or | Claim 50 is invalid for the reasons set forth for claims 1 and 4. |

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| | under the doctrine of equivalents. | |
| 51.   The method of claim 50, comprising a further step after step a) wherein a PCR product of the IPF-l gene of said genomic DNA is generated for use in the detection of step b). | For the reasons set forth for claim 44, Ambry does not infringe claim 51 either literally or under the doctrine of equivalents. | Claim 51 is invalid for the reasons set forth for claims 1 and 4.  Further, and with respect to invalidity under 35 U.S.C. §103, Cotton, *Mutation Research*, 285:125-144 (1993) reviews methods for detecting mutations including PCR (see page 133). |
| 54.   The method of claim 50, 51, 52, or 53, wherein the detection of said mutation in the IPF -1 gene is performed by nucleic acid sequence analysis. | For the reasons set forth for claim 44, Ambry does not infringe claim 54 either literally or under the doctrine of equivalents. | Claim 54 is invalid for the reasons set forth for claims 1 and 4.  Further, and with respect to invalidity under 35 U.S.C. §103, Cotton, *Mutation Research*, 285:125-144 (1993), reviews methods for detecting mutations including sequence analysis. |
| 56.   A method for screening a plurality of patients for pancreatic disease, comprising the steps:    a)       providing a plurality of nucleic acid samples from a corresponding plurality of patients, and    b)       detecting an IPF-l gene comprising the mutation IPF IΔC in said plurality of samples of step a), and wherein detection of said mutation in a sample of said plurality of samples is indicative of pancreatic disease in a patient of said plurality of patients. | Ambry does not infringe claim 56 either literally or under the doctrine of equivalents.  Ambry has not detected the recited mutation. | Claim 56 is invalid for the reasons set forth for claims 1 and 4. |
| 57.   The method of claim 56, wherein said nucleic acid is genomic DNA. | For the reasons set forth for claim 56, Ambry does not infringe claim 57 either literally or | Claim 57 is invalid for the reasons set forth for claims 1 and 4. |

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| | under the doctrine of equivalents. | |
| 58.    The method of claim 57, wherein said plurality of patients comprises a group of unrelated individuals. | For the reasons set forth for claim 56, Ambry does not infringe claim 58 either literally or under the doctrine of equivalents. | Claim 58 is invalid for the reasons set forth for claims 1 and 4. |
| 59.    The method of claim 57, wherein said plurality of patients comprises a group of related individuals. | For the reasons set forth for claim 56, Ambry does not infringe claim 59 either literally or under the doctrine of equivalents. | Claim 59 is invalid for the reasons set forth for claims 1 and 4. |
| 60.    The method of claim 58 or 59 wherein said mutation is detected in said IPF-1 gene in a patient selected from said plurality of patients who is asymptomatic with regard to pancreatic disease. | For the reasons set forth for claim 56, Ambry does not infringe claim 60 either literally or under the doctrine of equivalents. | Claim 60 is invalid for the reasons set forth for claims 1 and 4. |
| 61.    The method of claim 60, wherein said pancreatic disease is diabetes mellitus. | For the reasons set forth for claim 56, Ambry does not infringe claim 61 either literally or under the doctrine of equivalents. | Claim 61 is invalid for the reasons set forth for claims 1 and 4. |
| 62.    The method of claim 61, wherein said diabetes mellitus is of the form early onset type II. | For the reasons set forth for claim 56, Ambry does not infringe claim 62 either literally or under the doctrine of equivalents. | Claim 6 is invalid for the reasons set forth for claims 1 and 4. |
| 63.    The method of claim 62, wherein said diabetes mellitus of the form early onset type II is MODY. | For the reasons set forth for claim 56, Ambry does not infringe claim 63 either literally or under the doctrine of equivalents. | Claim 63 is invalid for the reasons set forth for claims 1 and 4. |
| 64.    The method of claim 63, wherein said MODY is of the type MODY4. | For the reasons set forth for claim 56, Ambry does not infringe claim 64 either literally or under the doctrine of equivalents. | Claim 64 is invalid for the reasons set forth for claims 1 and 4. |
| 65.    The method of claim 59, in which a patient selected from said plurality of patients | For the reasons set forth for claim 56, Ambry does not infringe claim 65 either literally or | Claim 65 is invalid for the reasons set forth for claims 1 and 4. |

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| shows observable clinical manifestations of pancreatic disease. | under the doctrine of equivalents. | |
| 66.      The method of claim 65, in which said patient selected from said plurality of patients shows observable clinical manifestations of diabetes mellitus. | For the reasons set forth for claim 56, Ambry does not infringe claim 66 either literally or under the doctrine of equivalents. | Claim 66 is invalid for the reasons set forth for claims 1 and 4. |
| 67.      The method of claim 66, in which said patient selected from said plurality of patients shows observable clinical manifestations of diabetes mellitus of the form early onset type II. | For the reasons set forth for claim 56, Ambry does not infringe claim 67 either literally or under the doctrine of equivalents. | Claim 67 is invalid for the reasons set forth for claims 1 and 4. |
| 68.      The method of claim 67, in which said patient selected from said plurality of patients shows observable clinical manifestations of MODY. | For the reasons set forth for claim 56, Ambry does not infringe claim 68 either literally or under the doctrine of equivalents. | Claim 68 is invalid for the reasons set forth for claims 1 and 4. |
| 69.      The method of claim 68, in which said patient selected from said plurality of patients who shows observable clinical manifestations of MODY has MODY4. | For the reasons set forth for claim 56, Ambry does not infringe claim 69 either literally or under the doctrine of equivalents. | Claim 69 is invalid for the reasons set forth for claims 1 and 4. |
| 70.      A method of testing a patient who is afflicted with MODY to determine whether or not said patient has MODY4, comprising detecting an IPF-1 gene comprising the mutation IPF1ΔC, and wherein detection of said mutation is indicative of MODY4. | Ambry does not infringe claim 70 either literally or under the doctrine of equivalents. The recited mutation has not been detected by Ambry. | Claim 70 is invalid for the reasons set forth for claims 1 and 4. |
| 71.      A method of screening for pancreatic | Ambry does not infringe claim 71 either | Claim 71 is invalid for the reasons set forth for |

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| disease in a patient whose parents both carry an inactivating mutation in the gene encoding IPF-1, comprising detecting an IPF-1 gene comprising the mutation IPF1ΔC, and wherein detection of said mutation is indicative of pancreatic disease. | literally or under the doctrine of equivalents.<br><br>The recited mutation has not been detected by Ambry. | claims 1 and 4. |
| 72.      The method of claim 71, wherein if said patient is heterozygous for said mutation, said mutation is indicative of MODY4. | For the reasons set forth for claim 71, Ambry does not infringe claim 72 either literally or under the doctrine of equivalents. | Claim 72 is invalid for the reasons set forth for claims 1 and 4. |
| 73.      The method of claim 71, wherein if said patient is homozygous for said mutation, said mutation is indicative of pancreatic agenesis. | For the reasons set forth for claim 71, Ambry does not infringe claim 73 either literally or under the doctrine of equivalents. | Claim 73 is invalid for the reasons set forth for claims 1 and 4. |
| 74.      The method of claim 72 or 73, wherein said screening is prenatal. | For the reasons set forth for claim 71, Ambry does not infringe claim 74 either literally or under the doctrine of equivalents.<br><br>Further, there is no evidence that Ambry has detected such a mutation during prenatal screening. | Claim 74 is invalid for the reasons set forth for claims 1 and 4. |
| 75.      The method of claim 72 or 73, wherein said screening is postnatal. | For the reasons set forth for claim 71, Ambry does not infringe claim 75 either literally or under the doctrine of equivalents. | Claim 75 is invalid for the reasons set forth for claims 1 and 4. |
| 76.      A method for testing a patient for pancreatic agenesis or MODY4, comprising the steps:<br>     a)      providing a nucleic acid sample from said patient,<br>     b)      performing on both allelic | Ambry does not infringe claim 76 either literally or under the doctrine of equivalents.<br><br>The recited mutation has not been detected by Ambry. | Claim 76 is invalid for the reasons set forth for claims 1 and 4. |

| ASSERTED CLAIMS | NON-INFRINGEMENT CONTENTIONS | INVALIDITY CONTENTIONS |
|---|---|---|
| copies of the gene encoding IPF-1 a detection step for an IPF-1 gene comprising the mutation IPF1ΔC, and<br>      c)    detecting said mutation in one or both of said allelic copies of said gene in said sample, wherein homozygosity of said mutation is indicative of pancreatic agenesis and wherein heterozygosity of said mutation is indicative of MODY4. | | |
| 77.    The method of claim 76, wherein said testing is performed prenatally. | For the reasons set forth for claim 76, Ambry does not infringe claim 77 either literally or under the doctrine of equivalents.<br><br>Further, the evidence does not establish that Ambry has detected such a mutation during prenatal screening. | Claim 77 is invalid for the reasons set forth for claims 1 and 4. |
| 78.    The method of claim 76, wherein said testing is performed postnatally. | For the reasons set forth for claim 76, Ambry does not infringe claim 78 either literally or under the doctrine of equivalents. | Claim 78 is invalid for the reasons set forth for claims 1 and 4. |

116133 v1/DC